**WOLF POPPER**                                              **BURWICK LAW**

June 20, 2025

**VIA ECF**

Hon. Colleen McMahon
United States District Court for Southern District of New York
Daniel Patrick Moynihan United States Courthouse
500 Pearl St., Courtroom 24A, Chambers Room 2550
New York, NY 10007-1312

      Re:    *Carnahan v. Baton Corp. Ltd. d/b/a Pump.Fun et al.*, No. 1:25-cv-00490 (CM) (BCM) (S.D.N.Y.), *Aguilar v. Baton Corp. Ltd. d/b/a Pump.Fun et al.*, No. 1:25-cv-00880 (CM) (BCM) (S.D.N.Y.)

Dear Judge McMahon:

      We represent the plaintiffs in the above-captioned matters. We write in response to Your Honor's Order in both cases on June 18, 2025, requesting a letter explaining "why there are two lawsuits; why they should not be consolidated into a single lawsuit . . .; which complaint should be the operative pleading . . . ; and why I need two lead plaintiffs and two law firms to serve as lead counsel."

      The short answers to these questions are: the two cases are very similar but the second one has a broader class definition; the cases should be consolidated into the earlier-filed *Carnahan* docket number; we propose a modest schedule for the filing of an amended consolidated complaint and for the defendants to respond; Mr. Okafur should serve as the Lead Plaintiff of the broader class and allegations in the *Aguilar* complaint, but Mr. Kvenild should serve as a representative of the subclass for those securities that he purchased; and our two firms have complimentary skills that will benefit the Class.

      As we noted in our prior letter motion to the Court (*Carnahan* ECF 12; *Aguilar* ECF 13), these two cases are very similar because they both allege that the same defendants violated the Securities Act of 1933 by selling or soliciting the sale of unregistered securities. Specifically, the Defendants operate the Pump.Fun website to sell and solicit the sale of memecoins. The difference between the claims is that the later-filed case (*Aguilar*) alleges a class that includes all purchasers of any memecoin through Pump.Fun, while the earlier-filed case (*Carnahan*) brings claims only on behalf of all purchasers of a single unregistered security (the $PNUT token).

      We think that these two cases (which were marked as related) should be consolidated together and we are agnostic as to which case moves into which. As Your Honor noted, it is easier to consolidate *Aquilar* into the earlier-filed *Carnahan* matter.[1]

      As is common practice in cases governed by the Private Securities Litigation Reform Act, we request a schedule that would allow us to file a consolidated amended complaint. Knowing that the motion for appointment of Lead Plaintiff and Lead Counsel is not opposed, we can

---

[1]     We were able to confer briefly with counsel for Defendants this afternoon. Defendants agree that the cases should be consolidated. As to the other points, Defendants take no position at this time but reserve the right to respond, if necessary, after reviewing this submission.

Hon. Colleen McMahon
June 20, 2025
Page 2

continue our research and investigation into the facts of the case and consider whether additional defendants are appropriate. We suggest a deadline to file a complaint of 90 days from the entry of an order appointing Lead Plaintiff and Lead Counsel. We expect that we can negotiate a briefing schedule for a likely motion to dismiss with Defendants' counsel after they have considered the anticipated amended complaint.

There is considerable overlap between the two cases, but the claims asserted by Mr. Okafor include those brought by Mr. Kvenild. We believe that Mr. Okafor should be appointed Lead Plaintiff of the proposed Class of purchasers of all securities available on Pump.Fun. Mr. Kvenild can serve as a named representative in the amended complaint on behalf of a subclass of purchasers of the $PNUT token if necessary.

Plaintiffs' counsel are aware that Your Honor is "generally opposed to appointing more than one lead counsel in securities fraud class actions, to avoid duplication and keep costs down." *Carnahan* ECF 28. However, Plaintiffs requested the two Lead Counsel structure precisely because there will be no duplication efforts or unnecessary costs here.

As noted in the law firm biographies submitted in support of the Lead Plaintiff motions, Wolf Popper LLP and Burwick Law PLLC have different and complementary strengths and experiences. *See, e.g.*, *Carnahan* ECF 16-4 (Wolf Popper biography); *Carnahan* ECF 16-5 (Burwick Law biography); *Carnahan* ECF 15 at 9-11 (describing the firms). Wolf Popper LLP is a law firm with over 80 years of experience in leading complex litigation, which has primarily been class action litigation for the past 50 years. Indeed, just this week the Judge Novak in the United States District Court for the Eastern District of Virginia preliminarily approved a $425 million class action settlement in which Wolf Popper is lead counsel, which I and my partner Matthew Insley-Pruitt, among others, litigated. *See In re Capital One 360 Savings Account Interest Rate Litigation*, MDL No. 1:24md3111 (DJN), ORDER (Preliminarily Approving Class Action Settlement and Scheduling Final Approval Hearing), ECF 174(E.D. Va. June 16, 2015).

Burwick Law, on the other hand, is a crypto-litigation boutique with "over 20 years of combined cryptocurrency experience among its team—an eternity in the crypto world." *Carnahan* ECF 16-5 at 2 of 3. Its in-house blockchain-forensics and crypto-culture team prepares comprehensive on-chain investigative analyses that trace wallet flows, decode smart-contract mechanics, and map community dynamics. Leveraging those findings, Burwick Law turns complex blockchain data into clear, persuasive court filings. For example, Burwick Law recently secured an *ex parte* temporary restraining order in *Hurlock v. Kelsier (Libra)*, No. 1:25-cv-03891 (S.D.N.Y.), freezing roughly $58 million in the USDC stablecoin and halting further transfers of over $110 million in proceeds related to the Libra token.

In a nutshell, Wolf Popper has the securities law and class action experience and Burwick Law has the subject matter expertise to effectively jointly represent the Class. In Court hearings, Wolf Popper will take the lead on procedural and securities law related matters. When the Court requires analysis of the case's blockchain or factual complexities, Burwick Law will address those points. This complementary, necessary dynamic for handling crypto's complexities means duplication of attorney efforts and associated costs is not a concern. The firms work closely together and are involved in several crypto-related cases where they have been appointed as co-

WOLF POPPER                                                                    BURWICK LAW

Hon. Colleen McMahon
June 20, 2025
Page 3

counsel[2]. For these reasons, Plaintiffs believe having the two firms appointed as Co-Lead Counsel will be advantageous to both the Class and the Court.

Respectfully,

*/s/ Chet B. Waldman*                                           */s/ Max Burwick*
Chet B. Waldman                                                 Max Burwick

---

[2] *Cantner v. Game of Silks, Inc., et al.*, 25-80262-CIV-CANON, ECF 26, Order Appointing Lead Plaintiff and Lead Counsel and Directing Final Pleading (S.D. Fla. June 13, 2025); *Mena v. Schultz, et al.*, 24 CV 8695 (ERK) (CLP), ECF 16, Memorandum and Order (E.D.N.Y. Apr. 23, 2025). The two firms are also working closely together on several other litigations.

3