**brown**rudnick

STEPHEN D. PALLEY
DANIEL L. SACHS
KYLE D. DORSO
SPalley@brownrudnick.com
DSachs@brownrudnick.com
KDorso@brownrudnick.com

June 25, 2025

**VIA CM/ECF**
Hon. Colleen McMahon
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

**RE:    _Carnahan v. Baton Corp., Ltd. et. al_ 1:25-cv-00490-CM-BCM (S.D.N.Y.)
(_"Carnahan"_); _Aguilar v. Baton Corp., Ltd., et. al_ 1:25-cv-00880-CM-BCM
(S.D.N.Y.) ("_Aguilar_")**

Dear Judge McMahon,

We write on behalf of Defendants Baton Corporation, Ltd., Alon Cohen, Dylan Kerler, and Noah Bernhard Hugo Tweedale (collectively, "Defendants,") in the two associated, above-captioned matters and in response to Plaintiff's letter dated June 20, 2025, (ECF No. 29, the "Letter") responding to your Honor's June 18, 2025, order and requests (ECF No. 28).[1] Defendants respond to highlight the Letter's improper request that Movant Okafor "be appointed Lead Plaintiff of the proposed Class of purchasers of **all** [putative] securities available on Pump.Fun" (emphasis added), including those that he does not allege to have purchased, and to request that the Court limit any lead plaintiff appointment order to the alleged token purchases as to which there is constitutional and statutory standing. [2]

## I.    Background Regarding the _Carnahan_ and _Aguilar_ Actions

Plaintiffs initiated these actions by filing the _Carnahan_ complaint on January 16, 2025, and the _Aguilar_ complaint on January 30, 2025. Both complaints, filed by the Wolf Popper and Burwick law firms, purport to allege comparable violations of the federal securities laws by Defendants. The _Carnahan_ Complaint alleges purchases of only the "PNUT" token, while the

---

[1] Unless otherwise noted, all references to ECF numbers are to filings in _Carnahan_.

[2] Numerous Southern District of New York courts have held that Defendants have standing to raise deficiencies in lead plaintiff applications, particularly where "there are no other plaintiffs challenging [a] motion for lead plaintiff." _City of Pontiac Gen. Emps. Ret. Sys. v. Lockheed Martin Corp._, 844 F. Supp.2d 498, 501 n.3 (S.D.N.Y. 2012) (analyzing PSLRA and concluding that "defendants do have standing to challenge" a motion for lead plaintiff); _see also King v. Livent_, 36 F. Supp.2d 187, 190 (S.D.N.Y 1999) (same); _Finocchiaro v. NQ Mobile, Inc.,_ 2016 WL 7031613, at *2 (S.D.N.Y. Dec. 1, 2016) (agreeing with _Livent_).

*Aguilar* complaint alleges purchases of the "FRED", "FWOG" and GRIFFAIN" tokens. *Carnahan* ECF No. 1; *Aguilar* ECF No. 1. The *Carnahan* Complaint purports to initiate a class action on behalf of all purchasers of the PNUT token, and the *Aguilar* Complaint purports to initiate a class action on behalf of "all purchasers of the Tokens," and defines the "Tokens" as "cryptocurrency memecoins or tokens that were issued by, promoted by, or sold by the Defendants through Pump.Fun, or for which the Defendants solicited the sale of through Pump.fun." *Aguilar* ECF No. 1 at 1.  Notably, the *Aguilar* Complaint does not include specific allegations about any tokens other than the three allegedly purchased by Aguilar.

Subsequently, in March and April 2025, the same law firms filed motions for the appointment of lead plaintiff and lead counsel in both matters on behalf of two *different* alleged purchasers. Movant Kvenild moved for lead plaintiff in the *Carnahan* matter, and he filed a list of his transactions in "PNUT Tokens, the security that is the subject of the [*Carnahan*] complaint." ECF No. 16-2.

Movant Okafor, however, took a different tack. Movant Okafor's motion for lead plaintiff includes a putative list of his "transactions in the Pump.Fun Tokens, the securities that are the subject of the complaint." *Aguilar* ECF No. 17-2. Movant Okafor includes a chart of 46 pages worth of transactions in what appears to be 90 different tokens identified by "token address." *Id*. It does not appear that Mr. Okafor alleges to have purchased the FRED, FWOG and GRIFFAIN tokens that are the subject of the *Aguilar* Complaint. For some tokens, Mr. Okafor alleges to have made only a single purchase of less than $500, and for at least one token the chart identifies only a sale and no purchase.[3] On June 18, 2025, the Court asked Plaintiffs' Counsel to respond to a number of questions about the *Aguilar* and *Carnahan* matters by order dated June 18, 2025, and Plaintiffs' Counsel responded with the Letter.

Among other things, the Letter proposes (1) that the *Carnahan* and *Aguilar* matters be consolidated; and (2) that Movant Okafor serve as lead plaintiff on behalf of a consolidated "proposed Class of purchasers of **all** [alleged] securities available on Pump.Fun." Letter at 2, emphasis added. Defendants agree that consolidation is appropriate. As to the second proposal, however, Movant Okafor lacks constitutional and statutory standing to lead the boundless class proposed by Plaintiffs' Counsel.

---

[3] *See e.g.* purchase of $499.66 on 3/5/25 identified in penultimate row of page 12; purchase of $23.07 on 6/8/2024 identified in the top row of page 39; single sale of $377.60 on 3/4/2025 identified on the bottom of page 38. Courts in this Circuit have denied motions for appointment of lead plaintiff where the movant's claimed losses amounted to $500 or less. *See McCormack v. Dingdong (Cayman) Ltd.*, 2022 WL 172336586, at *5 (S.D.N.Y. Nov. 30, 2022) (denying motion for appointment as lead plaintiff in part because claimed losses of $504.40 in the "realm of securities litigation, this is a token amount"); *Bosch v. Credit Suisse Group AG*, 2022 WL 4285377, at *5 (E.D.N.Y. Sept. 12, 2022) (denying motion for appointment as lead plaintiff where claimed losses were $621 and collecting comparable cases).



## II. Movant Okafor Cannot Serve As Lead Plaintiff On Behalf of a Class of Buyers of Tokens He Did Not Buy

In essence, Plaintiffs' counsel purport to bring a securities class action encompassing the purchase of every one of the *millions* of tokens ever made "available" on Pump.Fun even though Movant Okafor and his co-Plaintiffs have alleged to have purchased only a small subset of them. Binding precedent concerning Article III standing and the applicable statutory scheme, however, preclude this.

As the Court is aware, the "irreducible constitutional minimum of" Article III standing requires, among other things, that putative plaintiffs actually "suffered an injury in fact." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). This is to ensure that courts adjudicate only "cases and controversies" that "seek redress for a legal wrong." *Id*. "That a suit may be a class action . . . adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong.'" *Id*. at 1547 n.6.

Applied in the securities class action context, plaintiffs cannot satisfy the Article III standing requirement where they "have not alleged that they have suffered any injury stemming from [an] offerings [that] they did not purchase." *In re Lehman Bros. Sec. and ERISA Litig.,* 684 F.Supp.2d 485, 491 (S.D.N.Y. 2010), *aff'd sub nom In re Lehman Bros. Mortgage-Backed Sec. Litig*., 650 F.3d 167 (2d Cir. 2011). Indeed in *Lehman Bros*., named plaintiffs alleged purchases in "nine of the ninety-four offerings [but they did] not allege[] any personal injury stemming from the other eighty-five [and] therefore have no standing to assert those claims." *Id*. The Second Circuit affirmed a similar ruling in *Police and Fire Ret. Sys. of City of Detroit v. IndyMac MBS, Inc*., in which the district court "dismissed for lack of constitutional standing all claims in the Amended Complaint arising from offerings that the Wyoming entities, as the only named plaintiffs, had not purchased." 721 F. 3d 95, 111 (2d Cir. 2013).

Further, the Second Circuit found that the "structure and purposes of the PSLRA" support this holding and confirmed that "there must be a named plaintiff sufficient to establish jurisdiction over each claim advanced." *Id.* at 112. Indeed "nothing in the PLSRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action . . . it is inevitable that, in some cases, the lead plaintiff will not have standing to sue on every claim." *Id*. (quoting *Hevesi v. Citigroup Inc*., 366 F.3d 70, 82 (2d Cir. 2004).

To that point, the PSLRA specifically requires lead plaintiff applicants to file a sworn statement that the plaintiff "did not purchase **the security that is the subject of the complaint** at the direction of plaintiff's counsel" and a list of "all of the transactions of the plaintiff in the **security that is the subject of the complaint** during the class period specified in the complaint." 18 U.S.C. § 78u-4(a)(2) (emphasis added). The PSLRA also directs courts to analyze whether a lead plaintiff applicant is "capable of adequately representing the interests of class members" or whether "unique defenses" would impair such representation. *Id*. at § 78u-4(a)(3)(B)(i) and (iii). Congress imposed these requirements in part to ensure that "parties with significant financial interests in the litigation 'will participate in the litigation and exercise

control over the selection and actions of plaintiffs counsel.'" *Pirelli Armstrong Tire Corp., Retiree Med. Benefits Trust v. Labranche & Co., Inc.* 229 F.R.D. 395, 402 (S.D.N.Y. 2004) (quoting House Report). In other words, the PSLRA allows for the appointment of lead plaintiffs only to the extent that they purchased enumerated securities, which are the "subject of the complaint" that alleges the class action that they wish to lead, and under circumstances that incentivize them to supervise plaintiff's counsel. *See id*.

Here, Movant Okafor identifies transactions in what he submits are "securities that are the subject of the complaint" but those securities are not the subject of the *Aguilar* or *Carnahan* complaints. Further, the Letter requests Okafor's appointment as lead plaintiff of a proposed class that includes purchasers of additional, unnamed putative securities beyond those that Okafor alleged to have bought. The Court should reject this proposal. The standards for Article III standing, binding precedent and the spirit and letter of the PSLRA require that any order appointing a lead plaintiff encompass a class of purchasers of only putative securities that the lead plaintiff alleged to have bought.[4]

### III.    Conclusion

In light of these constitutional and statutory mandates, to the extent that the Court elects to grant Movant Okafor's motion for lead plaintiff, the Court should limit Okafor's appointment to lead a putative class of purchasers of only tokens that he purchased and whose interests he can adequately represent. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) and (iii).


Respectfully submitted,

 */s/ Daniel L. Sachs*
Stephen D. Palley
Daniel L. Sachs
**BROWN RUDNICK LLP**
1900 N Street NW, 4th Floor
Washington D.C. 20036
Tel: (202) 536-1766
spalley@brownrudnick.com
dsachs@brownrudnick.com

*Kyle S. Dorso (pro hac vice)*
**BROWN RUDNICK LLP**
185 Asylum St.
Hartford, CT 06103

---

[4] Defendants reserve the right to revisit these and related arguments in a motion to dismiss or motion for class certification as necessary. *See generally Pirelli*, 229 F.R.D. at 408 (determination on appointment of lead plaintiff "must be without prejudice to the possibility of revisiting that issue" in later motion practice).



Hon. Colleen McMahon
June 25, 2025
Page 5

Tel: (860) 509-6500
kdorso@brownrudnick.com

*Counsel for Defendants*