UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x

KENDALL CARNAHAN,

       Plaintiff,

  -against-                                      25 Civ. 490 (CM)

BATON CORPORATION LTD., d/b/a
PUMP.FUN, ALON COHEN, DYLAN
KERLER, and NOAH BERHARD
HUGO TWEEDALE,

       Defendants.

------------------------------------------------------------x

DIEGO AGUILAR, on behalf of himself
and all others similarly situated,

       Plaintiff,

  -against-                                      25 Civ. 880 (CM)

BATON CORPORATION LTD., d/b/a
PUMP.FUN, ALON COHEN, DYLAN
KERLER, and NOAH BERHARD HUGO
TWEEDALE,

       Defendants.

------------------------------------------------------------x

## APPOINTMENT OF LEAD PLAINTIFF AND LEAD COUNSEL

McMahon, J.:

      These are two overlapping securities fraud class actions, involving the sale by the same defendants of various crypto-currencies over a website called Pump.Fun. The difference between the cases is that the later-filed case (*Aguilar*) alleges a class that includes all purchasers of any memecoin through Pump.Fun, while the earlier-filed case (*Carnahan*) brings claims only on behalf of all purchasers of a single type of crypto-currency – a memecoin known as a PNUT Token. In other words, the class pleaded in *Aguilar* subsumes the class pleaded in *Carnahan*. The

cases are brought by the same two law firms. Rather than simply amend the complaint in *Carnahan* to broaden the class, counsel have chosen to file two lawsuits, in the hope that they can have two lead plaintiffs appointed. In response to an inquiry from the court, they urge that Michael Okafor be appointed as lead counsel for the broader class pleaded in *Aguilar,* and that Aaron Kvenild be appointed as lead counsel for what they hope will be certified as a subclass in *Carnahan.* The motions are unopposed by any other proposed lead plaintiffs. Counsel also consent to the consolidation of the two cases.

The court has no basis to appoint lead counsel for any subclass, because I have no basis to conclude that there ought to be any subclass. As far as I can tell, PNUT memecoins are simply one version of the type of memecoins that are alleged to be at issue in this case. No one has explained why dealers in PNUT memecoins should be broken out as a subclass. Doing so risks multiplying the cost of this litigation.

Kvenild claims to have lost approximately $18,606.93 as a result of his purchase and sale of PNUT Tokens. Okafor claims to have lost approximately $242,076.74 as a result of his purchase and sale of various Pump.Fun Tokens. Okafor has the larger financial loss. He is, therefore, appointed as lead counsel. If, at class certification stage, it should turn out that PNUT Tokens need to be broken out as a separate subclass, I will deal with the need to appoint subclass counsel. Because Okafor is a plaintiff in *Aguilar,* I am directing that the two cases be consolidated under that style and case number (25 Civ. 880), and that the complaint in *Aguilar*, which covers all memecoins issued by defendants, be deemed the operative pleading.

I asked counsel why it was necessary to appoint two firms as lead counsel, given my rather well-known aversion to the appointment of multiple lead counsel – a practice that, in my experience, invariably inflates the amount of attorneys' fees claimed at the end of a case. Counsel have advised that the Wolf Popper firm would be appointed for its expertise in securities law, and the Burwick firm for its expertise in the field of crypto-currency. Normally one appoints counsel who are competent securities lawyers (Wolf Popper certainly qualifies) and those lawyers learn what they need to know about the industry in which the securities were issued. I am skeptical that this case should be treated any differently, but I will skin the cat differently. Both firms are appointed as lead counsel. However, when it comes to an award of attorneys' fees (should such fees be awarded), I will eliminate what I perceive as duplication of effort – multiple layers of review of pleadings and discovery; multiple attorneys in attendance at depositions. It seems to me that Burwick Law can serve as a behind-the-scenes advisor on technical issues without running up too much in time charges, and that is my expectation.

Finally, counsel have asked for 90 days to file an amended complaint – which will allow them time to "continue research" and possibly identify additional defendants. Frankly, research should be done before pleadings are filed. Counsel may have 30 days (which is to say, until July 22), to file an amended pleading if they care to do so. Any new defendants who might be identified in that 30-day period must be served within 20 days thereafter (Federal Rules time periods are suspended), so that we can get moving toward resolution on the merits. Defendants have until September 5, 2025, to file a motion to dismiss or an answer. If a motion to dismiss is filed, Plaintiffs have until September 26 to file a response and Defendants have until October 10 to file a reply. I am not changing these dates, so don't ask. Before making any motion, Defendants would be well

advised to read one or two of my recent decisions on motions to dismiss in securities fraud cases to see how I deal with the analysis of alleged misstatements or omissions (which is to say, on a statement by statement basis).

If an answer is filed, the parties will have 60 days to complete class discovery and 30 days after that to file a motion for class certification. If a motion to dismiss is filed, the parties will have 60 days to complete class discovery once the motion is decided, and 30 days thereafter to file a motion for class certification. My usual rules for responsive papers (14 days) and reply papers (7 days) will apply to any such motion.

Please do not try to get the schedule elongated. Once I actually get control over the calendaring of a securities fraud case, I like to move things along.

## CONCLUSION

The Clerk is directed to remove the motions at Docket #14 (in 25 Civ. 490) and Docket #15 (in 25 Civ. 880) from the court's list of open motions; to consolidate these two cases under Case Number 25 Civ. 880 (*Aguilar)* and to administratively close Case Number 25 Civ. 490 (*Carnahan*). All future filings should be made under the *Aguilar* case number only.

This constitutes the written decision and order of the court.

Dated: June 25, 2025

_____
U.S.D.J.

BY ECF TO ALL COUNSEL